1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     JOE SQUEO, et al.,                      Case No.  24-cv-02235-SVK

8                    Plaintiffs,
                                              **ORDER GRANTING**
9          v.                                 **IN PART AND DENYING IN**
                                              **PART MOTION TO DISMISS**
10    CAMPBELL SOUP COMPANY, et al.,          **WITHOUT LEAVE TO AMEND**

11                   Defendants.              Re: Dkt. No. 21

12          Plaintiffs Joe Squeo and Tiffany Taylor allege that Defendants Campbell Soup Company

13    ("Campbell") and Snyder's-Lance, Inc. ("SL") deceived them by including the artificial

14    preservative citric acid among the ingredients in chips that Defendants advertised as containing no

15    artificial preservatives.  *See* Dkt. 16 (the "FAC").  Defendants now move to dismiss.  *See* Dkt. 21

16    (the "Motion").  Plaintiffs oppose the Motion.  *See* Dkt. 26 (the "Opposition").  Defendants filed a

17    reply.  *See* Dkt. 27 (the "Reply").  All Parties have consented to the jurisdiction of a magistrate

18    judge.  *See* Dkts. 13, 24-25.  The Court has determined that the Motion is suitable for resolution

19    without oral argument.  *See* Civil Local Rule 7-1(b).  After considering the Parties' briefing,

20    relevant law and the record in this action, and for the reasons that follow, the Court **GRANTS IN**

21    **PART** and **DENIES IN PART** the Motion **WITHOUT LEAVE TO AMEND**.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

United States District Court
Northern District of California

I.      **BACKGROUND**

The following discussion of background facts is based on the allegations contained in the FAC, the truth of which the Court accepts for purposes of resolving the Motion. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022); *Queen v. Mooney*, No. 24-cv-02161-SVK, 2024 WL 3363572, at *1 n.2 (N.D. Cal. July 9, 2024). "Defendants manufacture, distribute, advertise, and sell" potato chips under the "Cape Cod" brand. *See* FAC ¶ 2. The packaging for several flavors of Cape Cod chips "prominently displays" that the chips contain "No Artificial Colors, Flavors or Preservatives." *See id.* ¶¶ 2, 20-22. In reliance on this representation, Plaintiffs purchased Cape Cod chips over a three-year period before commencing this action—Plaintiff Squeo in California and Plaintiff Taylor in New York. *See id.* ¶¶ 16-18.

It turns out, however, that the purchased Cape Cod chips contained citric acid.[1] *See id.* ¶ 20; *see also id.* ¶ 21 (label on back of package lists citric acid among ingredients). While citric acid can form naturally in fruit, "it is not the naturally occurring citric acid, but the manufactured citric acid . . . that is used extensively as a food and beverage additive," and "it is not commercially feasible to use natural citric acid extracted from fruits." *See id.* ¶¶ 23-24 (emphasis omitted). Citric acid also functions as a preservative "when added to food products." *See id.* ¶¶ 41-49.

Therefore, according to Plaintiffs, the presence of citric acid in the Cape Cod chips renders the no-artificial-preservative representation false. *See id.* ¶¶ 2-3. Had Plaintiffs "known that the [Cape Cod chips] contain[ed] an artificial preservative ingredient in direct contradiction to the 'No Artificial Colors, Flavors or Preservatives' statement on the label," they "would not have purchased the [chips], or would have paid less for the[m]." *See id.* ¶ 18. They commenced this putative class action to recover for the harm Defendants inflicted through this alleged deception. *See id.* ¶¶ 5, 57.

///

---

[1] Plaintiffs bring their claims in connection with only those varieties of Cape Cod chips that (1) present a "No Artificial Colors, Flavors or Preservatives" representation on their packaging and (2) "include citric acid as an ingredient." *See* FAC at 1 n.1.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    LEGAL STANDARD

Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Rule 12(b)(1).**  Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject-matter jurisdiction over the claims asserted.  A defendant can challenge a court's subject-matter jurisdiction by mounting either:  (1) a facial attack based solely on the allegations of the complaint; or (2) a factual attack based on evidence outside the pleadings.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Whether a plaintiff has standing to proceed in federal court implicates Rule 12(b)(1).  *See Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021).

**Rule 12(b)(6).**  Under Rule 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Where a plaintiff alleges that a defendant engaged in fraudulent conduct, Rule 9(b) imposes a greater burden than does Rule 12(b)(6) and requires that the plaintiff "state with particularity the circumstances constituting fraud."  To satisfy this heightened pleading standard, a plaintiff must allege facts "specific enough to [notify the defendants] of the particular misconduct [constituting fraud] so that they can defend against the charge and not just deny that they have done anything wrong."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'"  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *See Kearns*, 567 F.3d at 1124 (citation omitted).  A plaintiff "must [also] set forth what is false or misleading about a statement, and why it is false."

United States District Court
Northern District of California

1    *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted).

2        In ruling on a motion to dismiss, a court may consider only "the complaint, materials

3 incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW*

4 *Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court

5 must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their

6 favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are

7 merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v.*

8 *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

9        If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to

10 amend the complaint, and it "acts within its discretion to deny leave to amend when amendment

11 would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad

12 faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th

13 Cir. 2020) (citation omitted).

14 **III.**    **DISCUSSION**

15        Plaintiffs bring five claims under California and New York law (*see* FAC ¶¶ 69-118):

16    •   Violation of the California Consumers Legal Remedies Act (the "CLRA").

17    •   Violation of the California Unfair Competition Law (the "UCL").

18    •   Breach of express warranty under California law.

19    •   Violation of Section 349 of the New York General Business Law.

20    •   Violation of Section 350 of the New York General Business Law.

21 They seek to obtain, *inter alia*, damages and equitable relief on a classwide basis. *See id.* ¶¶ 119-

22 26. As discussed below, Plaintiffs' five claims survive the Motion, but their request for injunctive

23 relief does not.

24 ///

25 ///

26 ///

27 ///

28 ///

### A.    Defendants' Request For Judicial Notice Is Moot

Defendants request that the Court judicially notice several documents cited in the Motion. *See* Motion at 3 n.1; *see also* Dkts. 21-1 through 21-4.  Having reviewed the Motion and the documents in question, the Court concludes that its resolution of the Motion would not change even if it granted the request for judicial notice and considered the documents in its analysis.  The Court, therefore, **DENIES** the request for judicial notice as moot.  *See, e.g.*, *Sylabs, Inc. v. Rose*, No. 23-cv-00849-SVK, 2023 WL 8813517, at *4 (N.D. Cal. Dec. 19, 2023) (denying as moot request for judicial notice where court's analysis "would not change even if it . . . considered the documents in question").

### B.    Plaintiffs Sufficiently Allege That Defendants Engaged In False And Misleading Advertising

The CLRA prohibits engaging in certain enumerated categories of "unfair methods of competition and unfair or deceptive acts or practices" in connection with selling goods and services, including misrepresenting the characteristics of those goods and services.  *See* Cal. Civ. Code §§ 1770(a)(5), (7), (9), (16).  Likewise, the UCL prohibits engaging in "unlawful, unfair or fraudulent business act[s] or practice[s] and [disseminating] unfair, deceptive, untrue or misleading advertising."  *See* Cal. Bus. & Prof. Code § 17200.  Similarly, Sections 349 and 350 of the New York General Business Law prohibit engaging in "[d]eceptive acts or practices" and "[f]alse advertising" in connection with conducting "any business, trade or commerce or in the furnishing of any service."  *See* N.Y. Gen. Bus. Law §§ 349(a), 350.

Courts analyze claims under these four statutes together when predicated on allegedly false and misleading advertising (*see, e.g.*, *Amado v. Procter & Gamble Co.*, No. 22-cv-05427-MMC, 2023 WL 3898984, at *7-10 (N.D. Cal. June 8, 2023); *Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-02048-MMA, 2022 WL 2441303, at *11-14 (S.D. Cal. July 5, 2022)), and the Parties do not dispute the propriety of the Court performing a combined analysis here.  The Parties also do not dispute that Plaintiffs' California claims sound in fraud, thereby requiring Plaintiffs to satisfy the heightened pleading standard of Rule 9(b).[2]  *See, e.g.*, *In re iPhone 4s Consumer Litig.*, 637 F.

---

[2] The Second Circuit has held that Rule 9(b) does not govern claims under Section 349 of the New York General Business Law, and the district courts of New York have extended this holding to

1    App'x 414, 415 (9th Cir. 2016) (applying Rule 9(b) to CLRA and UCL claims based on

2    allegations concerning deceptive misrepresentations disseminated in advertising campaign).

3         Defendants raise three arguments in requesting dismissal of these claims for failure to state

4    a claim:  (1) Plaintiffs do not sufficiently allege that the citric acid included in the chips is

5    artificial; (2) Plaintiffs do not sufficiently allege that the citric acid included in the chips functions

6    as a preservative; and (3) Plaintiffs do not sufficiently allege that a reasonable consumer would be

7    deceived by the labeling on the chips' packaging.  The Court rejects all three arguments.

8              1.    Plaintiffs Sufficiently Allege That The
                     Chips Contain Artificially Produced Citric Acid

9         Based on the allegations in the FAC, the Court may reasonably infer that Defendants

10   include manufactured, as opposed to naturally produced, citric acid in the varieties of Cape Cod

11   chips at issue.  Two key allegations support that inference:  (1) "it is not the naturally occurring

12   citric acid, but the manufactured citric acid . . . that is used extensively as a food and beverage

13   additive"; and (2) "it is not commercially feasible to use natural citric acid extracted from fruits."

14   *See* FAC ¶¶ 23-24 (emphasis omitted).  Plaintiffs support these two allegations with citations to

15   reports from a scientific journal and the United States Department of Agriculture.  *See id.* at 9-10

16   ns. 11-12.  These supported facts are sufficient at the pleading stage, even under the heightened

17   requirements of Rule 9(b)—accepting the alleged facts as true, as the Court must, <u>it is highly</u>

18   <u>likely</u> that the citric acid included in the chips was artificially produced.

19        Defendants essentially counter that Plaintiffs speculate that the chips contain artificially

20   produced citric acid based on "citric acid production generally."  *See* Motion at 6-8 (emphasis

21   omitted).  In Defendants' view, Plaintiffs cannot simply rely on generalized allegations and must

22   instead "demonstrate that the specific citric acid used in the chips is artificial."  *See id.* at 8.  The

23

24   _____

25   Section 350 as well.  *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.
     2005); *see, e.g., Sheiner v. Supervalu Inc.*, No. 22-cv-10262-NSR, 2024 WL 2803030, at *3
26   (S.D.N.Y. May 28, 2024); *La Rosa v. Abbott Lab'ys*, No. 22-cv-05435-RER, 2024 WL 2022297,
     at *4 (E.D.N.Y. May 7, 2024).  Whether Rule 9(b) applies to Plaintiffs' New York claims "makes
27   no difference here, given that the Court [concludes that Plaintiffs'] allegations satisfy Rule 9(b)"
     in its analysis of the California claims.  *Sponchiado v. Apple Inc.*, No. 18-cv-07533-HSG, 2019
28   WL 6117482, at *6 n.3 (N.D. Cal. Nov. 18, 2019).

1  Court disagrees that either of Rules 12(b)(6) or 9(b) imposes such a stringent burden on a plaintiff

2  at the pleading stage.  As explained above, Plaintiffs' well-supported allegations render it highly

3  likely that the citric acid included in the chips was artificially produced.  At the very least, those

4  allegations permit the Court to reasonably infer that the chips contain artificially produced citric

5  acid.  *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) ("A plausible

6  claim includes 'factual content that allows the court to draw the reasonable inference that the

7  defendant is liable for the misconduct alleged.'" (citation omitted)).

8        Defendants' cited authorities do not persuade the Court otherwise (*see* Motion at 6-9;

9  Reply at 2-4):

10  - In *Pelayo v. Conagra Brands, Inc.*, No. 23-cv-05833-JD, 2024 WL 3544621 (N.D. Cal.

11    May 2, 2024), the plaintiffs alleged only that "[c]ommercial food manufactures, like [the

12    defendant], use a form of citric acid that is derived from heavy chemical processing," an

13    allegation which the court characterized as "wholly conclusory and unsupported by any

14    facts."  *See id.* at *1.  Plaintiffs offer supported and more-detailed allegations here.

15  - In *Valencia v. Snapple Beverage Corporation*, No. 23-cv-01399-CS, 2024 WL 1158476

16    (S.D.N.Y. Mar. 18, 2024), the plaintiff alleged, "without any corresponding factual basis,"

17    that "citric acid today is industrially made," and consequently concluded that the product in

18    question contained the artificially produced variety of citric acid.  *See id.* at *1, *5-6.

19    Here, however, Plaintiffs offer support for their allegations concerning the prevalence of

20    manufactured citric acid in food products.

21  - In *Hawkins v. Coca-Cola Company*, 654 F. Supp. 3d 290 (S.D.N.Y. 2023), the plaintiff

22    alleged that laboratory analysis demonstrated that the product in question contained

23    artificially produced malic acid.  *See id.* at 297.  The court rejected this "amorphous"

24    allegation as insufficient.  *See id.* at 305-06.  But here, Plaintiffs offer more than

25    "amorphous" allegations.

26  - In *Tarzian v. Kraft Heinz Food Company*, No. 18-cv-07148-CPK, 2019 WL 5064732

27    (N.D. Ill. Oct. 9, 2019), the plaintiffs alleged that the product in question contained

28    artificially produced citric acid because "it is more economically viable to produce citric

United States District Court
Northern District of California

1    acid for industrial use through [a] fermentation process."  *See id.* at *1, *4.  Again,

2    however, Plaintiffs here offer allegations that, if accepted as true, render it highly likely

3    that the citric acid included in the chips was artificially produced.[3]

4        The decision in *Branca v. Bai Brands, LLC*, No. 18-cv-00757-BEN, 2019 WL 1082562

5    (S.D. Cal. Mar. 7, 2019), is instructive.  There, the plaintiff accused the defendants of including

6    misleading "NO artificial flavors" and "naturally flavored" labels on a beverage because the

7    beverage contained malic acid.  *See id.* at *1.  Malic acid is both naturally formed and artificially

8    synthesized, and the defendants pointed out that the plaintiff "simply assume[d]" that the beverage

9    contained the artificial variant.  *See id.* at *1-2.  The court held that that assumption did not

10   compel dismissal because the plaintiff had alleged "how artificial malic acid is created, [how it] is

11   used in beverage products like [the beverage at issue], and why [the defendants] use [the artificial

12   malic acid] in place of natural malic acid."  *See id.* at *3 (citation omitted); *see also, e.g.*, *Noohi v.*

13   *Kraft Heinz Co.*, No. 19-cv-10658-DSF, 2020 WL 5554255, at *2-3 (C.D. Cal. July 20, 2020)

14   (allegations sufficient where the plaintiffs alleged that the defendants "intentionally used artificial

15   DL-Malic Acid because it was likely cheaper and/or it more accurately resembled natural flavors

16   than Citric Acid or other acids" despite the defendants' protestations that these allegations

17   "amount to nothing more than speculation").  Likewise, here, Plaintiffs do not simply assume that

18   the citric acid in the chips was artificially produced but provide a supported, factual basis for that

19   conclusion.[4]

20   _____

21   [3] At least one district court in the Ninth Circuit has similarly distinguished *Valencia* and *Tarzian*
     on the basis that "[t]he complaints in [those cases] were . . . more generalized" than the complaint

22   at issue.  *See Fried v. Snapple Beverage Corp.*, No. 24-cv-00653-DMS, 2024 WL 4479877, at *4
     n.2. (S.D. Cal. Oct. 11, 2024).

23

24   [4] Defendants raise three other arguments to support their position that Plaintiffs do not sufficiently
     allege that the chips contain artificially produced citric acid:  (1) the United States Department of

25   Agriculture "recognizes that manufactured citric acid can be considered a non-synthetic
     substance"; (2) Plaintiffs conclusorily assert that "the chips contain residues of chemical solvents";

26   and (3) the reference on the chips' packaging to "bioengineered ingredients" does not refer to
     citric acid.  *See* Motion at 8.  These arguments do not counter the reasonable inference that the

27   chips contain artificially produced citric acid stemming from Plaintiffs' allegations about the
     prevalence of artificially produced citric acid and lack of commercial feasibility of using naturally

28   produced citric acid.  The Court, therefore, need not evaluate these three arguments in resolving

United States District Court
Northern District of California

2.     Plaintiffs Sufficiently Allege That The Citric Acid
Included In The Chips Functions As A Preservative

Plaintiffs expressly allege that citric acid "acts as a preservative when added to food products," a conclusion which they base on, *inter alia*, statements issued by the United States Food and Drug Administration and Department of Agriculture and articles published in academic journals. *See* FAC ¶¶ 41-49. Thus, the Court may reasonably infer that the chips contained a preservative. Defendants counter that the mere presence of citric acid in the chips does not indicate that the citric acid actually functioned as a preservative or that Defendants added citric acid to the chips for the purpose of preserving them. *See* Motion at 9-10. But Plaintiffs squarely rebut this argument in the FAC; they expressly allege that citric acid "functions as a preservative in the [chips] regardless of whether Defendants intended to use citric acid as a preservative" and even "when present at low levels." *See* FAC ¶¶ 47-48. Defendants also note that they do not include citric acid in certain "unflavored varieties" of Cape Cod chips not at issue in this action but do include citric acid in the flavored varieties identified by Plaintiffs, thereby "demonstrating that the citric acid is in the chips to enhance flavor, not for preservation." *See* Motion at 10. The Court, however, cannot consider these assertions concerning unflavored varieties of Cape Cod chips in its evaluation under Rule 12(b)(6), as those assertions do not appear in the FAC. *See UFCW Loc.*, 895 F.3d at 698 (in evaluating motion to dismiss for failure to state a claim, court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice" (citation omitted)).

Defendants' cited authorities are also unavailing (*see* Motion at 9-10; Reply at 8):

• In *Zuchowski v. SFC Global Supply Chain, Inc.*, No. 20-cv-10171-ALC, 2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022), the plaintiff concluded that certain ingredients acted as preservatives when included in frozen pizzas based on allegations that they acted as preservatives when included in breads and baked goods. *See id.* at *3. The court rejected the plaintiff's conclusion because she failed to "explain how these ingredients operate as preservatives in . . . frozen pizzas, as opposed to breads and baked goods." *See id.* Here,

the Motion.

9

however, Plaintiffs have alleged more broadly that citric acid functions as a preservative when added to food in general.

- In *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017), the court declined to accept the plaintiff's allegation that, "<u>in general</u>," citric acid functions as a preservative when added to food as sufficient to permit a plausible conclusion that it functioned as a preservative in the products at issue. *See id.* at 819-23. Respectfully, this Court disagrees; if citric acid generally functions as a preservative when added to food, then it is reasonable to infer at the pleading stage that it did so as an ingredient in the chips. The *Hu* court also observed that "it [wa]s unclear whether [the plaintiff] ha[d] squarely alleged that citric acid does function as a preservative in the" products at issue. *See id.* at 821. That is not a concern here. *See* FAC ¶ 41 ("Citric acid acts as a preservative when added to food products, <u>including the Products at issue</u>." (emphasis added)).

In any event, whether citric acid actually functions as a preservative in the chips is a question of fact unsuitable for resolution at the pleading stage. *See, e.g.*, *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014); *Ivie v. Kraft Foods Glob., Inc.*, No. 12-cv-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013); *Lozano v. Walmart, Inc.*, No. 23-cv-04500-SPG, 2024 WL 412606, at *9 (C.D. Cal. Feb. 1, 2024).

### 3. Plaintiffs Sufficiently Allege That The Labeling On The Chips' Packaging Would Mislead A Reasonable Consumer

To state a claim under the four consumer-protection statutes at issue, a plaintiff must allege that a defendant's conduct would mislead a reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). This reasonable-consumer standard

> requires more than a mere possibility that [a defendant's] label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."

United States District Court
Northern District of California

See *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citations omitted); *see also Orlander*, 802 F.3d at 300 ("[T]he alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." (quotation marks and citation omitted)).  Plaintiffs satisfy that standard here—they allege that the chips' packaging represents that the chips do not contain artificial preservatives and that the chips nevertheless do, in direct contravention of that representation, contain an artificial preservative.  At the pleading stage, those allegations suffice. *See, e.g.*, *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1147-48 (S.D. Cal. Apr. 29, 2021) ("The Court finds that Plaintiffs plausibly plead that a reasonable consumer could be misled by advertising products as not containing artificial additives or preservatives where the products contain ingredients that Plaintiffs allege are additives or preservatives." (citation omitted)); *cf. Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-03889-JD, 2018 WL 1116715, at *4 (N.D. Cal. Mar. 1, 2018) ("[T]he complaint plausibly alleges that a reasonable consumer could be misled by the challenged representations.  A consumer might reasonably understand 'All Natural Dog Food With Added Vitamins, Minerals, & Nutrients' to mean that the food is free of synthetic additives apart from the added vitamins, minerals, and nutrients.  But the complaint alleges that the foods contain synthetic and artificial ingredients that are not vitamins, minerals, or nutrients, including sodium tripolyphosphate, citric acid, and lactic acid.").

Defendants object to Plaintiffs' citations to scientific journals and agency opinions as not representative of the views of reasonable consumers.  *See* Motion at 8 (citing FAC ¶¶ 28-31).  But in the referenced paragraphs of the FAC, Plaintiffs do not refer to the cited authorities to demonstrate whether a reasonable consumer would be deceived; rather, they rely on those authorities to support their allegation that the chips contain artificially produced citric acid.  *See* FAC ¶¶ 28-31.  Defendants also assert that Plaintiffs' "theory requires consumers to read the 'No Artificial Colors, Flavors or Preservatives' statement as meaning 'No Multi-Function Ingredients Where One Possible Function Is As A Preservative, Even Where The Ingredient Does Not Function As A Preservative In This Product[,]'" an interpretation that no reasonable consumer would reach.  *See* Motion at 10.  As discussed above, however, Plaintiffs sufficiently allege that the citric acid in the chips functions as a preservative, thereby requiring consumers to read the

11

1    package label as meaning precisely what it says—that the chips contain no artificial

2    preservatives—which is eminently reasonable.

3         In any event, whether a reasonable consumer would be deceived "will usually be a

4    question of fact not appropriate for decision on demurrer."  *See Williams*, 552 F.3d at 938

5    (citations omitted); *see, e.g.*, *Tapia v. Coca-Cola Co.*, No. 22-cv-01362-HSG, 2023 WL 2621346,

6    at *4 (N.D. Cal. Mar. 23, 2023) ("At this stage, the Court cannot say as a matter of law . . . that a

7    reasonable consumer would not be deceived by the product label." (citation omitted)).

8                                            * * *

9         In sum, the Court will not dismiss Plaintiffs' four consumer-protection claims as

10   insufficiently pled.

11        **C.    Plaintiffs Have Standing To Pursue Their**
                 **Claims But Not To Pursue Injunctive Relief**

12        Federal courts may preside over an action only where a plaintiff has standing.  *See*

13   *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "[S]tanding consists of three elements.

14   The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

15   conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

16   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).  Defendants argue that

17   Plaintiffs cannot satisfy the injury requirement such that they cannot pursue their claims or

18   injunctive relief.

19        1.    Plaintiffs Suffered An Injury Sufficient
                 To Confer Standing To Bring Their Claims

20

21        Defendants argue that Plaintiffs may not pursue their claims because they did not suffer the

22   requisite injury as they "received exactly what they bargained for:  products that were not

23   preserved by 'artificial' preservatives, but that contain citric acid."  *See* Motion at 11.  As

24   discussed above, however, Plaintiffs sufficiently allege that they did not receive chips that

25   conformed to the no-artificial-preservatives representation included on their packaging.

26   Defendants also assert that any "idiosyncratic and subjective disappointment" suffered by

27   Plaintiffs cannot satisfy the injury requirement.  *See id.*  Even if true, the Court need not look to

28   allegations of subjective disappointment to evaluate Plaintiffs' standing.  Plaintiffs expressly

allege that they relied on the false and misleading labels on the chips' packaging and that they would have paid less for the chips (or would not have purchased the chips at all) had they known the truth. *See* FAC ¶ 18.  At the pleading stage, those allegations satisfy the injury requirement. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." (citations omitted)); *see, e.g.*, *Bryan v. Del Monte Foods, Inc.*, No. 23-cv-00865-MMC, 2023 WL 4758452, at *2-3 (N.D. Cal. July 25, 2023); *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 872-73 (N.D. Cal. 2022).

### 2.   There Is No Risk That Plaintiffs Will Be Deceived Again

Defendants argue that Plaintiffs "lack Article III standing to pursue injunctive relief because they do not allege a likelihood of suffering imminent and irreparable injury in the future without an injunction." *See* Motion at 12.  To satisfy the injury requirement in connection with seeking an injunction, a plaintiff must show an "actual and imminent, not conjectural or hypothetical" threat of injury.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  In the deceptive-advertising context,

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.  Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.  In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.  In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (citations omitted).

In *Davidson*, for example, the plaintiff purchased wipes advertised as "flushable."  *See id.*

United States District Court
Northern District of California

13

at 961-62.  She subsequently observed, and confirmed through research, that the wipes were not actually flushable.  *See id.* at 962.  The Ninth Circuit held that she satisfied the injury requirement:

> Despite now knowing that the "flushable" labeling was false at the time of purchase, "[s]hould [the plaintiff] encounter the denomination ['flushable'] on a [Kimberly–Clark wipes package] at the grocery store today, [she] could not rely on that representation with any confidence."  In other words, [the plaintiff] faces the similar injury of being unable to rely on Kimberly–Clark's representations of its product in deciding whether or not she should purchase the product in the future.

*Id.* at 971-72 (citations omitted).  Relying solely on *Davidson*, Plaintiffs argue that they satisfy the injury requirement because they "are unable to rely on the Products' labeling when deciding in the future whether to purchase the Products."  *See* Opposition at 23-24.  The Court disagrees.

Plaintiffs were allegedly deceived by the no-artificial-preservatives representation because they did not expect the chips to contain citric acid in light of that representation.  In the future, if they see a similar representation on the chips' packaging, they now know to check the ingredients list on the packaging to determine if Defendants added citric acid to the chips.  Armed with the ability to easily determine whether the chips contain citric acid, there is simply no threat that Plaintiffs will be deceived in the same way again.  Several California district courts have endorsed this reasoning.  For example, in *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018), the court held that "there [was] no future risk that [the] plaintiff w[ould] be misled" by an allegedly deceptive label once he understood that his initial interpretation of the label "was unfounded."  *See id.* at *3.  Likewise, in *Jackson v. General Mills, Inc.*, No. 18-cv-02634-LAB, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020), the court explained that because the plaintiff "now knows she can ascertain the amount of cereal she is buying by looking at the label [on a box], she has not shown any likelihood she will be deceived in the future" as to the amount of cereal in that box.  *See id.* at *5.  And in *Cordes v. Boulder Brands USA, Inc.*, No. 18-cv-06534-PSG, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018), the court found that the plaintiff "could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel," as he was "on notice about potential

14

1   underfilling" in each bag.  *See id.* at *4.

2       The Court will therefore dismiss Plaintiffs' request for injunctive relief and will do so

3   without leave to amend because Plaintiffs cannot plead around their inability to be deceived again

4   without fundamentally changing their allegations.  *See, e.g.*, *Caldwell v. Nordic Nats., Inc.*, 709 F.

5   Supp. 3d 889, 913 (N.D. Cal. 2024) ("Defendant's motion is granted without leave to amend in

6   relation to Plaintiff's claims for injunctive relief because Plaintiffs cannot cure the allegation with

7   additional facts given the nature of the product at issue.  In other words, no amount of amending

8   the complaint would render the product more akin to the flushable wipes in *Davidson*.").

9       **D.      The Court Will Not Dismiss The Breach-Of-Express-Warranty Claim**

10      In requesting dismissal of the breach-of-express-warranty claim, Defendants argue only

11  that the claim must fail for the same reasons the consumer-protection claims fail.  *See* Motion at

12  12-13.  Because those claims survive the Motion, the breach claim survives as well.

13      **E.      Plaintiffs Sufficiently State A Claim Against Campbell**

14      Defendants argue that because the "Cape Cod [brand] is manufactured and marketed by

15  [SL], a wholly-owned, indirect subsidiary," Plaintiffs do not and cannot "allege any facts to show

16  that Campbell . . . had any part in labeling, advertising, or marketing" the chips.  *See* Motion at 10-

17  11.  The Court disagrees.  According to the Campbell press release cited in the FAC, Campbell

18  acquired SL in 2018.[5]  *See Campbell Completes Acquisition of Snyder's-Lance*, Campbell Soup

19  Company, https://investor.campbellsoupcompany.com/news/financial-news/news-

20  details/2018/Campbell-Completes-Acquisition-of-Snyders-Lance/default.aspx (Mar. 26, 2018).

21  At the time of the purchase, SL owned the Cape Cod brand.  *See id.*  Following the purchase,

22  Campbell "integrat[ed]" its own portfolio of snack brands with SL's portfolio of snack brands,

23  including the Cape Cod brand, "to create a unified snacking organization in the U.S. called

24  Campbell Snacks."  *See id.*  This integration surpassed a merely superficial combination of

25  _____

26  [5] Plaintiffs allege facts based on and include a link to the press release in the FAC (*see* FAC at 3
    n.3), and the Court may accordingly rely on the press release in resolving the Motion.  *See, e.g.*,
27  *Mophie, Inc. v. Shah*, No. 13-cv-01321-DMG, 2014 WL 10988339, at *3 n.2 (C.D. Cal. July 24,
    2014).
28

United States District Court
Northern District of California

companies, as it involved "integrat[ing] key control functions, including supply chain and quality, and finance," and installing a new leadership team to helm the integrated snack portfolio. *See id.*

Accordingly, the Court may reasonably infer that, following Campbell's acquisition of SL in 2018, Campbell maintained more than a passive role in the manufacture and marketing of the Cape Cod brand. Thus, Plaintiffs sufficiently allege Campbell's direct involvement in the at-issue deception.[6]

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion as follows:

- The Court declines to dismiss Plaintiffs' claims.
- The Court **DISMISSES** Plaintiffs' request for injunctive relief **WITHOUT LEAVE TO AMEND**.
- The Court declines to dismiss Campbell from this action.

The Parties shall appear for an initial case-management conference on **December 10, 2024**, and shall submit a joint case-management statement by **December 3, 2024**.

**SO ORDERED.**

Dated: October 22, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge

---

[6] The Court, therefore, need not evaluate Defendants' argument concerning alter-ego liability. *See* Reply at 9-10.

United States District Court
Northern District of California